for Review case that, broadly speaking, presents two issues for the court. The first issue deals with the motion for transfer that Mr. Casimiro Cruz Tellez filed last week. And the second issue it presents is whether this court has jurisdiction over the legal issues in the petition for review. If the court concludes that transfer is required, then it cannot address the merits of the petition for review. As it concerns the motion to transfer, there are two, in my opinion, two large issues there. The first one has to do with whether the citizenship claim was waived because it was not raised in the principal brief. The second issue has to do whether the evidence submitted raises a genuine issue of fact that Mr. Cruz Tellez is a United States citizen. As it concerns the merits of the petition for review, I think the issue there boils to one large issue. Is this court — does this court have jurisdiction to review Mr. Casimiro Cruz Tellez's questions presented? We submit that he has presented legal issues for this court to review. And therefore, there is no bar to this court's jurisdiction. I'd like to start first with the motion for transfer. Last week, we filed a motion to transfer this case. 8 U.S.C. 1252b5b requires that the court transfer a case to the district court whenever a citizenship or nationality claim is raised. Mr. Cruz Tellez has — Why did you wait until last week? We were waiting for a decision on the N-600 that had been filed with the U.S. Citizenship and Immigration Services. Had that application been approved, then we wouldn't have bothered the — this court anymore, and we would have sought dismissal of this case. In fact, we filed a motion earlier — I think it was made perhaps in late July — asking that the court abate proceedings pending a decision on the N-600. And so it wasn't until, I believe, August 6 or August 9 that we received the decision from the USCIS. At that point, I was on vacation, and it wasn't until I returned from vacation that I was able to meet with my client and do some research whether, in fact, we could go ahead and ask this court to transfer to the district court so that it could hear — that that court could hear the citizenship claim. In any event, our position — the government has argued waiver. Citizenship, as this court recognizes, is a jurisdictional fact for purposes of petitions for review. This court has jurisdiction over the petition for review under 8 U.S.C. 1252a1, which says that circuit courts in Congress have jurisdiction to review final orders of removal. Final orders of removal can only be entered against aliens. And so if a citizenship claim is raised, that fact, if established, defeats jurisdiction in this court because there is no petition for review to review. There is — there can be no final order. I think Respondent would agree we don't deport or remove or order — enter orders of removal against United States citizens. For this reason, the court made that point in Joseph v. Holder that they said citizenship is a jurisdictional fact that defeats jurisdiction in this court. And so it can never be waived. This court always has the power to review its own jurisdiction for purposes of subject matter jurisdiction. And so there is no waiver of the citizenship claim. The second issue on the motion to transfer is whether there is a genuine issue of fact that Mr. Crustease is a United States citizen. Mr. Crustease's father was born in the United States. There's no debate on that. He was born in Gregory, Texas, on July 7, 1928. Census records submitted to this court show that the family, at a minimum, were here until late December 1931. He had — Mr. Crustease — Petitioner's father had father — had siblings and half-siblings born in South Texas. At some point, the family departed and left for Mexico. Sotomayor, remind me, how old is Mr. Crustease? He's my age, so he's going to be 52 in November, Your Honor. All right. And so — and so the father and the family, Petitioner's father and the family, returned to Mexico. It's not in the record, but I know from talking to my client that his father didn't even know that he was a U.S. citizen, and he was coming back working in the United States anywhere from 9 to 10 months and returning as an adult. We didn't have that evidence at the time that we filed the — the motion to reopen. We had census — we had the Social Security records. We had the census records. We had birth certificates. And so we could cobble together approximately seven years that Petitioner's father was here. The reason for that is because some family members for — Petitioner's family members were unwilling to help out with the citizenship claim. It wasn't until about a year ago that one of his aunts, his father's sister, younger sister, was willing to come forward and say, OK, yes, I will help you. I was there in Mexico, in the city of Lampasos, and I was living in the same town, and I got to see your father, and I knew that he was going to the United States every year from 1956 to 1961. After 61, she married and she moved out of the city, so she can't say anything after 1961. And I knew that he would come back with dollars, and he would give money to our mother, and he would give money to his wife, my sister-in-law, and I would talk to him. And so she was willing to give that to us a year ago, which is when we were able to file the N-600. The N-600 was not adjudicated until this past month, and that is why we filed a motion to transfer only a week ago, Your Honor. Does it raise a genuine issue of fact? We believe it does. The standard is one that we employ for summary judgment. If the Court believes — if her statement is taken as true, would she — would Mr. Tejas be entitled to go to trial? We believe that he would be, if this was in the summary judgment context. And so, therefore, I would — I would ask the Court to transfer this case to the district court, because that court, Congress has mandated, must be the one that has to adjudicate the citizenship claim, notwithstanding whatever the USCIS did in reviewing the application for certificate of citizenship. Moving on to the petition for review — On this 56 to 61 of going to the U.S., I mean, is that equate to living in the U.S., the fact that you go to the U.S.? The statute for transmitting citizenship is that the person must demonstrate — the U.S. citizen parent must demonstrate physical presence, not residence, Your Honor. And so, in this case, since Mr. Kruste — How does that count? Like, I'm physically present in New Orleans a lot. I wouldn't really say I live here. And how does that count? Like, if I'm here for two days of oral argument, do we count it as two days? Do we count the whole week? Yes. How does all that — It would count just as the Court says. The USCIS has guided — Which one? I gave you an or. The first part. If you're here for two years, two days, they would count the two days. So then I would have had to come 180 times for two days to count as a year, roughly. That's right, Your Honor. And so the statute doesn't require that it be continuous physical presence. It simply has to be physical presence. So you have to cobble — you can cobble together the different time periods that the parent has been here. As it concerns the petition for review, if the Court concludes that transfer is not proper, the issue boils down to whether this is — the Court is reviewing a question of law or a factual question. We submit that what we're asking this Court to do is to review a question of law. Nothing in 8 U.S.C. 2052 — 1252A2C, the criminal alien bar, prevents this Court from reviewing questions of law. It says so in the statute, and this Court has repeated that most recently in the Penalva v. Sessions case. So what specifically is the question of law? The question is, did the BIA employ the correct legal standard for equitable tolling as it concerns both prongs, the reasonable diligence standard and the extraordinary circumstances standard? As it concerns the reasonable diligence standard, again, we're not asking the Court to review what did Mr. Crusteas do during the time period before he filed the motion to reopen. All we're asking the Court is to look at the BIA decision, and what the Court did is said, look, we only look at the 90 days after the removal order. That deadline essentially is conclusive. What is the evidence of what — so from the decision until he filed, what evidence did he put on of what he did to be diligent? Yes. So the evidence is there's a declaration that he submitted. It's attached to the motion to reopen. He visited with four attorneys before coming to see me. Each attorney told him there was nothing to be done. That is partly true. There was nothing to be done because of legal disabilities that prevented him from filing the motion to reopen. I guess I didn't ask that right. I'm not talking about since 2000. You're arguing that the beginning of the relevant time clock begins with the issuance of the Hinkle decision. So my question is, what evidence did he put on of his due diligence following the Hinkle decision? So the evidence that he had is he consulted, and it's not clear in his declaration, but he consulted with one other attorney in probably in February of 2017. Again, he's not a lawyer. He doesn't speak or read much English. He doesn't, like most lay people, probably consult this court's website for the opinions that come out or read court reporters. So he would not have been aware of that decision until he met with lawyers. He met with one lawyer in February who told him there was nothing to be done, and then he came and met with me. His family came and met with me, and I went to see him at the jail, and that's when I started to talk with him. He hired me, and I started to do the research. So I would say to the Court, prior to February, probably late February, early March of 2017, he didn't do anything because he wasn't aware of the decision. Do you see the problem with that? I mean, even assuming, arguendo, this is a legal question and we can reach it, I just have a problem with the notion that, well, it's just when the guy finds out about that case. Because, and I don't mean this, Mr. Tejas may be the most honest person in the world, so I'm not talking about him generally, but everybody else is just going to say, I found out about this case within 90 days of the time limit. I mean, another 20 years from now, somebody could pop up and go, I just found out about Hinkle. And what would you say to that? So the person could say, I was sitting in a farm in Mexico, and I just had not been looking on the internet, and then all of a sudden a friend of mine said, hey, guess what, this Hinkle decision came out 20 years ago. And you would say, that's fine, that's okay. And I just have a problem with that. Because, again, I don't, I'm not saying everybody's dishonest, but it would seem to breed a great deal of dishonesty if that's all it took. Your Honor, I would put it this differently. Equitable tolling doesn't apply in all circumstances. It's incredibly fact-specific. It doesn't lend itself to bright, bright-line rules. And so all we can do, and all the Court can do, is look at what happened in this case, and what did he do. I asked the Court to look at his declaration. He went to different lawyers. Everybody was telling him there was nothing to be done. And it wasn't until a few months, six months after U.S. v. Hinkle was decided, that he finally found someone that could tell him, you know what, you were never an aggravated felon. You never should have been deported on that basis. You always were eligible for cancellation for review. This was your one and only conviction. And, you know, given your history and the length of years that you were here in the United States, you may have been eligible. All we can do... If it's a fact-specific inquiry, we don't have jurisdiction over it. You do not, Your Honor. The question is then, yeah, but if you're asking us to establish, you're saying it's a legal question what the standard is. You haven't told me a standard. I'm saying I have a problem with the standard being, oh, I just found out. And then that triggers the 90 days. What is your standard? The standard is what the Supreme Court and this Court have said. When an individual learns of facts and circumstances that their cause of action has accrued or that they have legal rights that they must assert or they will lose them, they have to act. That is the point in time when the clock is triggered. And that's not what the BIA said. The BIA said the 90 days is conclusive. That's all that matters. I'm reserving for rebuttal, Your Honor. Yes, you've saved time for rebuttal, Mr. Maldonado. Thank you. Mr. Oliveira? May it please this Court, my name is Andrew Oliveira. On behalf of the respondent, the Attorney General William P. Barr, before getting into the motion to transfer, I just wanted to address the equitable tolling issue that Judge Haynes was asking about. Well, it would really be better if you'd deal with the jurisdictional issue first, which is the transfer motion. Okay. Fair enough. The government is opposed to the motion to transfer. We do not believe it raises a genuine issue of material fact. The documentary evidence that was submitted establishes that he had at most three and a half years in the United States before he returned to Mexico, and then it demonstrates approximately but less than three years in the United States prior to the birth of Petitioner. To fill those gaps, he attempted to submit affidavits from both himself and his aunt. This Court has said, however, that those types of declarations that are vague and self-serving are not sufficient to create a genuine issue of material fact. Furthermore, USCIS has adjudicated the claim. I thought we usually said that even self-serving affidavits can present issue of fact. I thought our more recent case law said that. Well, with respect to Rosales, it did say, though, that the claim has to be more than colorable, and the claim has to be significantly probative. How is it ever going to be anything other than self-serving? You're not going to, as the potential citizen, put on a bunch of evidence that your dad was never in America. You're going to put on evidence that helps you. And I don't mean improper or dishonest, but you're going to seek out the aunts who can say, oh, yes, he was going to America all the time during the 50s, and get them to do an affidavit. It's self-serving because it helps you, but so what? I mean, most evidence that people put on helps them. And the plaintiff is going to testify for the plaintiff again, and maybe also make concessions that hurt them, defend it the same way. So, again, I'm not saying everything helps them, but I think this term self-serving is a useless term here. Now, vague is a different question, but why is it vague? You can't be precise. I remember that on, you know, December 22, 1956, he went to America. But why wouldn't saying, you know, he's going, he's working, he's spending money through Friday, then he's coming home on the weekends, why isn't that, in general, specific enough? Well, again, a couple issues. One, his aunt did then testify to provide more details, and USCIS found that, her testimony, to be inconsistent. I would further note that his statements, he presented three different versions of his father's presence in the United States. So, if you take all the evidence, the, there's the documentary evidence, and then there's the affidavit and his statements, and they are simply not significantly probative to warrant another trial. But what would be the, if we sent it to the district court, what would be the standard they would apply relative to what the USCIS, or USCIS, whatever the acronym is, whatever their determination was, how much deference would the district court have to give to that finding? It would be a de novo review. Okay. So, you're saying there's inconsistencies in testimony, there's perhaps this or that, it's not perfect, I wouldn't expect it to be when we're talking about going back to the 50s and people's memories of that. But couldn't the district court then make a different determination of the credibility of that? Well, it's possible, but that goes to the concern that this is just an attempt to forum shop and just, this could have been raised at any time, even before the immigration judge in 2000. And had it been done so, he would have had a stronger case because he would have had the testimony of his father. All right, but he didn't know, he says he didn't know that he wasn't told he could do this. Again, that's, I don't know that we're going to resolve that question, like why didn't he? I don't, we don't ask that you do answer that question. We would just simply say that the evidence that he has presented now for this court does not equal a genuine issue of material fact. And that is consistent with what this court has held, both in Rosales and the other cases that we cite in our response. Do you agree that it's jurisdictional in the sense that if he is raising a sufficient issue of fact, which is what we'll decide, that that cuts off our jurisdiction and that it's not waived? It is a jurisdictional question, yes, Your Honor. We would just note, though, that this claim should have been raised much earlier to allow the parties to fully address it. Okay, but that was the purpose of my question. Even if it should have been, even if they knew a long time ago and could have raised it but didn't, nonetheless, if they present sufficient evidence now, then that defeats our jurisdiction and it has to go to the district court. Is that right? Yes, this court does not have to apply waiver. Well, that's not so much whether we have to, it's whether we can. I mean, we could have an entire trial in the district court at first appeal, go back and back and back and back, and then somebody suddenly points out the diversity jurisdiction is missing in a civil case where diversity jurisdiction is the claim for jurisdiction. And we would have to say, we lack subject matter jurisdiction, vacate the whole thing. That is the problem with something that's not waivable. Doesn't mean it's not sanctionable, but it's not waivable. So that's the question here. Can you, in the absence of committing treason or becoming a citizen of another country or something like that, can you ever waive your citizenship? Well, that's why we did focus mostly on the genuine issue of material fact. Again, the evidence presented just does not create a genuine issue of material fact, and that is fully consistent with this court's case law. Rosales, in that case, there was a specific factual issue that this court determined hadn't been addressed, whether or not the parents of Rosales had been, while they may have been married prior to his birth, the question was, could they have been divorced prior to his birth? And this court determined that the IJ had never fully addressed that, and then it transferred it to the district court. But here, there is no unadjudicated question. USCIS adjudicated the N-600 on the evidence that petitioners submitted to you a week ago. And the evidence there is simply vague. The testimony did not sufficiently provide details to allow USCIS to determine that petitioner met his burden of proving citizenship. And there is no new evidence. He's simply requesting yet another adjudication of the question. The documentary evidence, as we said, does not support, does not demonstrate that he has eligibility for citizenship. Turning to the motion to reopen, due diligence is a fact question. This court has explicitly stated so repeatedly, and because it is a fact question and the criminal alien review bar applies, because regardless of the aggravated felony issue, he is still removable for a controlled substance violation, which triggers the bar. And therefore, this court has no jurisdiction to review the determination that he failed to establish equitable tolling. With respect to the evidence that he did present, there is simply no evidence of the efforts he undertook prior to his removal. Okay, so let's get to that question. If we were to conclude that we do have jurisdiction to address the legal standard for equitable tolling when the claim is, hey, there's a brand new case and because of that, the world has changed, what kind of standard would you articulate? Let's assume, arguendo, that Hinkle is in extraordinary circumstance. I know you debate that and that's fair, but let's assume that. And then let's assume that we need a rule that's something other than when you just happened upon it, what would the rule be? Well, I would refer this court to Gonzales-Cantu, specifically footnote four, where this court explains that in addition to showing the efforts that one has undertaken after gaining actual knowledge, the movement must show the efforts undertaken to learn of that decision. And here, yes, there is some evidence that he consulted with lawyers after he illegally returned to the United States, but there is no evidence of efforts undertaken while he was in the United States. So I would imagine that if we're going to say that it's necessary that you be doing something other than just one day it pops into your, you know, Facebook page that this happened, but you're having to do something to discover changes in the law and so forth, how much do you have to do? Is it every month you have to call a lawyer? Is it every six months? What would be enough? So if I were an immigration lawyer and I was instructing my client that's now back in Mexico how much they have to do diligence to find something that would give them another chance, what would that be? Well, I would point out that that is a very factual question. And so there are no bright lines. It would be impossible to say you must check your court's website every month. This court has explicitly said that there can be no bright line rules, and it's simply that's something that has to be adjudicated on a case-by-case basis, but with respect to the efforts undertaken during the initial tolling period, there has to be some effort, and here there just simply is no effort. If there are no further questions. Thank you, Mr. Olviera. We would request that this court deny the petition for review and deny the motion to transfer. All right, thank you. Thank you. Mr. Maldonado for rebuttal. Yes, Your Honor. I just want to respond to something. Maybe I misheard opposing counsel that there were no efforts during custody. I don't understand what that means, but he went into custody in February of 2017. It was a matter of days after I was retained, and I did the research and advised him of what could be done, and I had to go to Houston and listen to the hearing take because I wasn't provided a tape. My office is in San Antonio, and so I'm not sure that's what he was alluding to. So anyway, before going back to the issue of review over the equitable tolling issue, the BIA is a question of law because the BIA employed the wrong standard as it concerns reasonable diligence. This court said in Lugo Recentes that the 90-day rule is not conclusive. It is a faulty premise to rely on that deadline as the starting point and the finishing point for determining equitable tolling. The second issue with the BIA and the legal standard it is with extraordinary circumstances because this court in Lugo Recentes, in Villegas v. Sessions, even in Dominguez-Cantu v. Sessions, consider the fact that a change in law may suffice to serve as an extraordinary circumstance. We use that as an assuming arguendo, which is a dangerous thing to rely on because in criminal cases where somebody's life is at stake, somebody's 30 years in prison is at stake, we have said change in the law is not an extraordinary circumstance. We said that in a death penalty case. So if we say that in that case, then why would that be an extraordinary circumstance in an immigration case? The case law in both areas, fields of law, has developed differently, Your Honor, I would say. Take, for example, in BIA case law having to do with sua sponte authority to reopen. They have said a fundamental change in law will suffice to reopen a final removal order. They have said it in matter of G.D. I don't have the site with me, but it is in the BIA's opinion in this case. I think it's the second footnote, too. Okay, but we don't get into the discretionary part of the sua sponte. So the question is, though, whether they have to apply equitable tolling in these the question of law of extraordinary circumstances comes in. Because admittedly, I agree with you, there is a lot of discretion in the executive branch in the area of immigration. I'm not saying unfettered, and I'm not getting into all of that. I'm just saying there's more discretion there than there is, perhaps, in the criminal arena. Although, you know, there's pardonability and so forth in the executive branch, too. But when we're, but still, when we're talking about what is an extraordinary circumstance that would force the BIA to look at, then I think we're in a little different category. We're not talking about discretion anymore. We're talking about you're forced to look at it. And what the BIA was supposed to do was look at these courts' precedents and see how the court, this court, has treated similar cases where there is a fundamental change in law. And this court, in all of these cases, Villegas v. Sessions, Lugo-Resendez v. Lynch, and even Dominguez-Cantu v. Sessions, the court treated a fundamental change in law as an extraordinary circumstance. Now, having, I want to touch one more point. But did any of those cases involve anything other than assuming arguendo? And did they hold that? Because I don't recall seeing anybody holding that. It was not an express holding, Your Honor. Okay. But they were all remanded for the BIA to consider whether the change in law suffice to establish extraordinary circumstances. Just one last point I want to make on the motion to transfer. The court is not here to weigh the credibility of the witnesses that gave declarations in support of the Certificate of Citizenship. The question is whether they raise a genuine issue of fact. It is for the district court, because Congress has mandated that they determine, that the district courts determine and decide the question of citizenship. If they believed, however vague or whatever, the ants and Mr. Tellez himself, there would be the 10 years. That's correct, Your Honor. Okay. And I would just point out that whatever the USCIS has decided, it's not binding on this Court and it's not binding on the district court. Thank you so much. Thank you, Mr. Maldonado. Your case is under submission.